STATE OF MAINE                        UNIFIED CRIMINAL COURT
KENNEBEC, SS.                         AUGUSTA
                                      DOCKET NO. CR-2017-21041


STATE OF MAINE

V.                                    **ORDER ON MOTION TO SUPPRESS**

JOHN R. BISHOP


## INTRODUCTION

This matter is before the court on the Defendant's Motion to Suppress dated February 15, 2018. The Motion seeks to suppress evidence seized from the Defendant's person after he was searched incident to his arrest on an outstanding warrant.[1] The Defendant claims that he was illegally stopped by a law enforcement officer without reasonable articulable suspicion while he was riding his bike. A hearing on the motion was held on March 27, 2018 at which Waterville Police Officer Cody Vigue testified. State's Exhibit 1 was admitted for impeachment purposes only. Defendant's Exhibit 1 was received by the court as a summary of case law prepared by defense counsel.

Based on the evidence presented at the hearing, the court makes the following findings of fact.

---

[1] The Motion as written and filed also sought to suppress all out of court identifications and all statements made by the Defendant as obtained in violation of *Miranda v. Arizona* and as being involuntary. No evidence was presented to the court at the testimonial hearing of March 27, 2018 relating to any out of court identifications or any inculpatory statements made by the Defendant and, therefore, the court will not discuss these issues further.

# FINDINGS OF FACT

On June 19, 2017 at approximately 12:30 a.m. Officer Vigue was patrolling down Main Street in Waterville when he saw a man (later identified as the Defendant) on a bicycle peddling in the opposite lane of travel. Officer Vigue testified that the bicyclist was in the left lane but was travelling against the flow of traffic. Nevertheless, the officer testified that he did not stop the bicyclist for that reason. Rather, the officer pulled his cruiser ahead of the bike rider and to the right. He then got out of his cruiser, walked across the street so that he was facing the oncoming bicycle and put his hand up in what he described as a "wave." The bicyclist stopped. Officer Vigue testified that he was not blocking the path of the bicycle and that the bicyclist could have driven past him.

The bicyclist asked the officer if he was being detained, and the officer replied that he was not. The officer explained that he wanted to talk to the bike rider because he was looking for information about a recent spate of motor vehicle burglaries. Officer Vigue asked the man for identification and the man stated that if he was not being detained he did not need to produce any identification. The officer asked the man for his name and the Defendant identified himself as John Bishop but did not give a date of birth. The officer apparently communicated with dispatch and learned that a John Bishop with a DOB of 6/14/1980 was the subject of an outstanding arrest warrant for an unpaid fine. The officer asked the Defendant if June 14, 1980 was his date of birth and the Defendant confirmed that it was.[2]

The Defendant was then placed under arrest, handcuffed and searched. A single pill was found and the Defendant was subsequently charged with unlawful possession of a Schedule W drug, to wit, Methylphenidate.

---

[2] The testimony was not clear as to how long the encounter between the officer and the Defendant lasted.

2

## DISCUSSION

The Defendant contends that he was subjected to an illegal investigatory stop that was not supported by reasonable articulable suspicion.[1] The State counters that Officer Vigue's actions did not amount to a stop at all but was more in the nature of a request to talk with the Defendant.

> An encounter between a police officer and a citizen implicates the Fourth Amendment only if the officer 'seizes' the citizen. We have held that a 'seizure' of the person occurs when 'the officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen' such that he is not free to walk away.
>
> We recognize, however, that 'not all personal intercourse between policemen and citizens' is a seizure within the meaning of the Fourth Amendment. Although the place where the intrusion occurs is not the controlling determinant of the seizure question, police officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, or asking her [him] if she [he] is willing to answer some questions.

*State v. Moulton*, 1997 ME 228, ¶¶ 7-8, 704 A.2d 361 (*citations omitted*). *See also United States v. Mendenhall*, 446 US. 544, 554 (1980) (a seizure occurs when, under a totality of the circumstances, a reasonable person would believe that he was not free to leave).

Contrary to the State's argument, the court finds that Officer Vigue did effectuate a stop and "seizure" of the Defendant on the morning of June 19, 2017. Any reasonable person in the Defendant's position would believe that he was

---

[1] The Defendant maintains that the officer cannot now rely upon his testimony that the Defendant was riding his bike against the flow of traffic as a basis for the stop because, (1) he did not include that in his report (*see* State's Exhibit 1), and (2) the officer disclaimed any intent to stop the bike on that basis and, indeed, testified that he did not believe that information was important enough to mention in his report. Rather, the officer testified that he did not believe he needed reasonable articulable suspicion to stop and talk with anyone, including the Defendant. In light of the fact that the officer was clear in his testimony that he "approached" the Defendant only for the purpose of seeking information about recent motor vehicle burglaries, the court does not find that the "stop" was justified by the claim that the Defendant was riding his bicycle against the traffic.

3

required to stop when confronted by a uniformed police officer standing in the middle of the road at 12:30 a.m. with his hand up in the air – a clear indication that he was directing the Defendant to stop. That stop was a restraint on the Defendant's liberty and freedom of movement such that he was not free to ignore the officer's perceived command to stop and drive past him. In short, it was reasonable in the totality of the circumstances for the Defendant to believe that he was being ordered to come to a stop for the officer.

Nevertheless, the State essentially argues that the Defendant was "unseized" when he was told by the officer that he was not being detained. In essence, the State suggests that whatever illegality existed with respect to the initial stop was "cured" by this statement such that a reasonable person under the circumstances would have believed that he was free to leave.

The court does not accept this reasoning. The Defendant was seized/stopped by Officer Vigue without reasonable articulable suspicion. The illegality of that stop was not erased simply by the officer asserting that no "detention" occurred, while continuing to question the Defendant including asking him to produce identification. The Defendant, having been stopped at the apparent instruction of a police officer, was "seized" at that point and a reasonable person would not have believed that he could simply ride off.

Assume, for example, a situation in which a police officer, without reasonable articulable suspicion, stops a motor vehicle and explains to the driver that he is not being detained but the officer stopped the vehicle in order to ask about some recent criminal activity in the area. The officer's assertion that no "detention" is taking place does not eliminate the taint of the illegal stop. And the operator of such a motor vehicle would not reasonably believe that, having been stopped at the direction of a law enforcement officer, he could simply drive off.

4

## CONCLUSION

The entry is: Defendant's Motion to Suppress dated February 15, 2018 is GRANTED.

Dated: March 28, 2018.

William R. Stokes
Justice, Superior Court